UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| MICHAEL F. ELLIOT<br>Plaintiff<br><br>v.<br><br>OFFICER CALEB BERGQUIST<br>INDIVIDUALLY AND IN HIS<br>OFFICIAL CAPACITY AS OFFICER<br>OF LOUISVILLE METRO POLICE<br>DEPARTMENT, ET AL.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 3:26-cv-00469-CRS |

*ELECTRONICALLY FILED*

---

**REPLY IN SUPPORT OF MOTION TO DISMISS ON BEHALF OF OFFICER CHARLES PEARSON, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS OFFICER OF LOUISVILLE METRO POLICE DEPARTMENT, LOUISVILLE METRO POLICE DEPARTMENT, AND LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT**

The Defendants, Officer Charles Pearson, individually and in his official capacity as Officer of Louisville Metro Police Department ("Pearson"), Louisville Metro Police Department ("LMPD"), and Louisville/Jefferson County Metro Government ("Metro"), by counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), moved the Court to dismiss the claims brought against them by the Plaintiff, Michael Elliot (DN 007, Page ID #77-101). The Plaintiff has responded (DN 010, Page ID #108-118). This is Pearson's, LMPD's, and Metro's reply in support of their motion.

## Argument

I. Plaintiff's Concessions

As an initial matter, Plaintiff graciously conceded several of the claims asserted against Pearson should be dismissed. Plaintiff agreed that the following causes of action against Pearson in his individual capacity are appropriate to be dismissed: Count I (conceded at DN 010, Page ID #110); Count II (conceded at DN 010, Page ID #110); Count III (conceded at DN 010, Page ID #110)(Plaintiff did not agree to dismiss his claim for failure to intervene against Pearson); Count IV (conceded at DN 010, Page ID #111); Count V (conceded at DN 010, Page ID #111); Count VI (conceded at DN 010, Page ID #111)( Plaintiff did not agree to dismiss his claim for failure to intervene against Pearson); Count VII (conceded at DN 010, Page ID #111); Count VIII (conceded at DN 010, Page ID #114)[1]; and Count IX (conceded at DN 010, Page ID #111).

Plaintiff also agreed to dismiss Louisville Metro Police Department (LMPD) as a named defendant (conceded at DN 010, Page ID #111).

Finally, Plaintiff agreed to dismiss any state law causes of action against Metro on the basis of sovereign immunity and his punitive damages claim against Metro (conceded at DN 010, Page ID #11).

Based on Plaintiff's concessions, the only claims that need to be addressed in this reply are the following: 1) the failure to intervene claims in Counts III and VI against Pearson, individually, for failing to intervene and prevent co-Defendant Bergquist from

---

[1] Plaintiff appears to have interpreted Section II of Pearson's Motion to Dismiss (DN 001, Page ID #87-88) as seeking a dismissal of the false imprisonment claim against BOTH Pearson and Bergquist. *See* DN 010, Page ID #113-114. While Pearson maintains the argument he raised applies to both him and Bergquist, Pearson only seeks the relief of dismissal of Count VIII against himself and not his co-Defendant. Any implication otherwise in the Motion to Dismiss was unintentional.

deploying his taser against Plaintiff; 2) the *Monell* claim against Metro; and 3) the federal official capacity claims against Pearson.

II. <u>The Failure to Intervene Claim Fails Because Pearson Did Not Have a Realistic Opportunity to Intervene</u>

Plaintiff argues that Pearson should be held liable for failure to intervene in Counts III (his § 1983 excessive force claim) and VI (his state law excessive force claim) because he did not verbally attempt to keep Officer Bergquist from deploying his taser. DN 010, Page ID #112. Notably, Plaintiff states that the time between when Officer Bergquist shouts "taser" and then deploys the taser is "[a]round four (4) seconds[.]" DN 010, Page ID #112. Such a short period of time is insufficient under 6th Circuit precedent to hold Pearson liable.

Initially, just being present at the scene of allegedly unconstitutional conduct by another officer without a showing of direct responsibility cannot subject Pearson to liability. *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013). Since Plaintiff concedes that Pearson did not directly use force against him (DN 010, Page ID #110-111), Plaintiff can only maintain his failure to intervene claim if he can show that Pearson had reason to know excessive force was going to be used and had both the opportunity and the means to stop it. *Id.* (citing *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)).

The 6th Circuit's opinion in *Amerson v. Waterford Township*, 562 Fed.Appx. 484 6th Cir, 2014), is instructive. In *Amerson*, the plaintiff, who was walking in the area of a reported break-in, fled when police officers attempted to stop him. After he surrendered and was arrested, he alleged one of the officers punched him in the face and kicked him in the head. *Id.* at 485-486. Amerson filed suit under 42 U.S.C. §1983 alleging excessive

force against the officer that used the force and failure to intervene against a bystander officer. *Id.* at 489.

The Court held that to hold the bystander officer liable he "would have had to perceive that [the other officer] intended to apply excessive force on [the plaintiff], find an opportunity to thwart his effort, and develop a means to intercede." *Id.* at 490. In affirming summary judgment in favor of the bystander officer, the Court noted that the officer did not have the opportunity or means to intervene, stating "the span of time within which [the bystander officer] should have perceived the excessive force and developed and implemented an intervention strategy could not have been more than a few seconds. [The bystander officer] had no opportunity to prevent the alleged use of force, given that the alleged events took place quickly and without any forewarning." *Id.* (citing *Ontha v. Rutherford County, Tennessee*, 222 Fed.Appx. 498, 506 (6th Cir. 2007)(holding that a time period of 6-7 seconds was not enough time to establish an opportunity for passenger in patrol car to intervene to stop driver from hitting fleeing suspect with vehicle)).

Plaintiff establishes the time between when Pearson would have had the earliest perception that Officer Bergquist was going to deploy his taser (Bergquist shouting "Taser, taser, taser") and when Bergquist actually deployed the taser as being four (4) seconds. DN 010, Page ID #112. This is consistent with the BWC Pearson tendered as Exhibit 1 to his Motion to Dismiss. Applying *Amerson* and *Ontha* to Plaintiff's asserted facts, that Pearson had only four seconds of notice prior to Officer Bergquist using his taser, and Exhibit 1, it is obvious Pearson did not have sufficient opportunity to prevent

Officer Bergquist's tasing of Plaintiff and Plaintiff's failure to intervene claim against Pearson fails. The failure to intervene claims should be dismissed with prejudice.[2]

III. <u>Plaintiff's *Monell* Claim Remains Insufficiently Pleaded</u>

Metro argued in its Motion to Dismiss that Plaintiff had failed to sufficiently plead his *Monell* claim against Metro. DN 007, Page ID #88-91. Specifically, Metro argued that Plaintiff did not identify any official adopted policy of Metro's causing Plaintiff's alleged constitutional injury; that all of Plaintiff's allegations were conclusory in nature; and that Plaintiff did not identify any other incidents of similar constitutional injuries that would support a finding of municipal liability. DN 007, Page ID #88-91.

In his response, Plaintiff relies on the allegations of the single incident described in the Complaint and vague, unidentified "policies and procedures against the homeless." DN 010, Page ID #114-115. Plaintiff then seems to pivot to a ratification theory of municipal liability against Metro. DN 010, Page ID #115. While seeming to argue a ratification theory, Plaintiff fails to identify the person with final decision-making authority who ratified any alleged constitutional violations. He simply reiterates the allegations of the Complaint and concludes "[t]he policy, pattern, custom and/or practice of Defendants was to ignore the rights of the homeless and remove them from the street." DN 010, Page ID #116 (citing DN 01-2, Page ID #27-29). Significantly, Plaintiff does not

[2] Plaintiff indicates that he is asserting a failure to intervene claim against Pearson as part of his state law excessive force claim for Officer Bergquist's taser use. DN 010, Page ID #111. Plaintiff has cited no Kentucky case or statute which establishes such a claim under state law. *Dunn v. Felty*, 226 S.W.3d 68 (Ky. 2007) sets forth the two circumstances under which an officer can be held liable for excessive force under Kentucky law: "(1) he or she has reasonable grounds for making the arrest but used more force than was necessary; and (2) he or she only used necessary force in effecting the arrest but there were, in fact, no reasonable grounds for the arrest." *Id.* at 74. As Plaintiff has conceded that Pearson did not exert any force on Plaintiff, Count VI of the Complaint must also be dismissed.

provide one other example of an alleged constitutional injury similar to the one Plaintiff is claiming in this case.

Further, the cases Plaintiff relies on do not support his *Monell* claim.[3] Plaintiff first cites *Wilson v. Louisville-Jefferson County Metro Government*, 2020 WL 981717 (W.D. Ky., Feb. 26, 2020) to argue that ratification does not require proof of a pattern or custom. DN 010, Page ID #115. While Metro concedes that is part of the holding in that unpublished opinion from this Court, *Wilson* is distinguishable on the facts. The Plaintiff in *Wilson* alleged that he was being targeted by a specific member of LMPD and filed a complaint with LMPD's "Internal Affairs" department and based his municipal liability theory on having made that complaint with no investigation being performed. *Wilson*, at *1. Plaintiff has not alleged any such complaints against Bergquist or Pearson which would form the basis of a ratification theory for a single incident constitutional violation. *Wilson* does not save Plaintiff's *Monell* claim.

Neither does the next case cited by Plaintiff, *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986). *Pembauer* established the single-incident ratification theory of *Monell* but does not apply to the facts alleged by Plaintiff. *Pembauer* involved the attempt of sheriff's deputies to serve two capiases on witnesses at the plaintiff's medical clinic, but they were barred entry. *Id.* at 472. The deputies called their supervisor for direction and were told to contact the county prosecutor who eventually directed the deputies to enter the facility and get the witnesses. *Id.* at 473. The deputies used axes to break down the

[3] Plaintiff cites to "*Wright*, 962 F.3d at 882" to support a ratification theory of failure to investigate and punish unconstitutional conduct. DN 010, Page ID #115. In preparing this response, the undersigned searched for this case to review it and found that 962 F.3d 882 is the citation for *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, a class action lawsuit involving a dental practice and a marketing company. With the only other information provided in Plaintiff's cite being the surname Wright, the undersigned was not able to identify the case Plaintiff intended to cite or verify it stands for the proposition cited.

door to the facility and searched the clinic for the witnesses. *Id.* The clinic owner-plaintiff then sued a host of individuals and Hamilton County for violation of his Fourth and Fourteenth Amendment rights. *Id.* at 474. On writ of certiorari, the Supreme Court determined that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480. "We hold that municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Id.* at 483.

Plaintiff has not alleged any facts which would support a deliberate choice by a final policy maker sufficient to find *Monell* liability for the underlying incident. Plaintiff relies on nothing more than the incident itself rather than identifying a specific policy or decision enacted by an official. *Pembauer* is in applicable to the facts in this case.

Plaintiff next directs the Court to *Feliciano v. City of Cleveland*, 988 F.2d 649 (6th Cir. 1993). *Feliciano* also does not apply in this instance because it involved a case in which police recruits were required to submit urine samples for drug tests by the police chief which, when positive, resulted in their forced resignations. *See generally, id.* The Court of Appeals in *Feliciano* held that the police chief's decision to require urine samples from all of the police cadets was not a decision by a final policymaker for purposes of imposing municipal liability. "[N]o municipal liability results where an official merely has discretion to act because subjecting a municipality to liability in such a situation would be 'indistinguishable' from *respondeat superior* liability." *Id.* at 656 (citing *City of St. Louis v. Praportnik*, 485 U.S. 112, 126 (1988)(plurality opinion)). Plaintiff has not alleged any decisions or policies established by someone with final decision-making authority and his municipal-liability claim fails as a matter of law.

Finally, Plaintiff relies on *Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005). DN 010, Page ID # 115-116. In *Thomas*, the plaintiffs alleged that an officer used excessive force pursuant to an unwritten policy. *Id.* at 427. The district court granted summary judgment to the municipality and the plaintiffs appealed. *Id.* The Court of Appeals affirmed. *Id.* Citing to *Doe v. Claiborne County*, 103 F.3d 495, 508 (6th Cir. 1996), the Court in *Thomas* stated "*Doe* makes clear that the plaintiff bears a heavy burden of in proving municipal liability, and he cannot rely solely on a single instance to infer a policy of deliberate indifference." *Thomas* at 433. Plaintiffs have not alleged any unconstitutional acts by either Officer Bergquist or Officer Pearson that would support a municipal liability claim due to inaction.

In summary, Plaintiff's *Monell* claim amounts to little more than a recitation of the elements of a municipal liability claim and conclusory statements without any factual support. The allegations are not sufficient to overcome the instant motion and the *Monell* claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

IV. The Official Capacity Claims Against Pearson Should Be Dismissed Because Plaintiff Failed to Sufficiently Plead his *Monell* Claim

Plaintiff argues that his official capacity claims against Pearson should not be dismissed because it would not be duplicative if Metro's motion to dismiss is granted. DN 010, Page ID #110. Plaintiff's contention is legally inaccurate. The Sixth Circuit has held that "a successful suit against a municipal officer in his official capacity must meet the requirements for municipal liability stated in *Monell*[.]" *Kraemer v. Luttrell*, 189 Fed.Appx. 361, 366 (6th Cir. 2006). Because Plaintiff's allegations don't meet the municipal liability requirements as outlined above, Pearson is entitled to dismissal of Plaintiff's official capacity claims against him.

**CONCLUSION**

Plaintiff has either conceded that Pearson, LMPD, and Metro are entitled to dismissal of Plaintiff's claims against them or has failed to rebut their well-supported Motion to Dismiss. Plaintiff's action against Pearson, both individually and officially, LMPD, and Metro should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

MICHAEL J. O'CONNELL
JEFFERSON COUNTY ATTORNEY

/s/ Brendan R. Daugherty

SAMANTHA A. BEVINS
BRENDAN R. DAUGHERTY
Assistant Jefferson County Attorneys
First Trust Centre
200 South Fifth Street, Suite 300N
Louisville, Kentucky 40202
Phone (502) 574-6333
samantha.bevins@louisvilleky.gov
brendan.daugherty@louisvilleky.gov
*COUNSEL FOR DEFENDANTS PEARSON, LMPD, AND METRO*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2026, a copy of the foregoing was filed using the Court's CM/ECF system which will send copies to counsel of record.

/s/ Brendan R. Daugherty

*COUNSEL FOR DEFENDANTS PEARSON, LMPD, AND METRO*